IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HAROLD G. FLOYD, ID # 14417-031, ) | |
| Petitioner, ) | |
| vs. ) | No. 3:05-CV-2489-M (BH) |
| ) | ECF |
| DAVID BERKEBILE, Warden, ) | Referred to U.S. Magistrate Judge |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, a prisoner incarcerated in a federal prison in Seagoville, Texas, (FCI Seagoville), filed the instant action pursuant to 28 U.S.C. § 2241 to challenge the manner in which he is serving his federal sentence and the calculation of credit to his federal sentence by the Bureau of Prisons (BOP). David Berkebile is the proper respondent for this action.

### B. Factual and Procedural History[1]

On May 2, 2002, state law enforcement personnel arrested Petitioner for drug related offenses in Kansas. The state proceedings were pending when he was arrested on a federal charge of being a felon in possession of a firearm in the District of Kansas on September 17, 2002. The

---

[1] The filings in this case and Petitioner's federal criminal case, *United States v. Floyd*, No. 5:02-CR-40100-001 (D. Kan. 2002), provide the factual and procedural history for this case. Courts may take judicial notice of their "own files and records, as well as facts which are a matter of public record." *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006).

federal court sentenced him to sixty months imprisonment on January 10, 2003, and issued a written judgment reflecting that sentence and remanding him to the custody of the United States Marshal on January 15, 2003. On January 17, 2003, the Marshal returned Petitioner to state custody subject to a federal detainer.

On March 10, 2003, the state District Court in Elk County, Kansas, sentenced Petitioner on the state charges to concurrent terms of imprisonment (a twelve month and a twenty-four month term of imprisonment both to be followed by twelve months of post-release supervision), which were to also run concurrently with the federal sentence that had already been imposed. The state court granted Petitioner credit toward his state sentences for the time spent in state custody (1) between the date of his arrest on May 2, 2002, and the date he was arrested by federal authorities on September 17, 2002, and (2) between the date he was returned to state custody on January 17, 2003, and the date the state court sentenced him on March 10, 2003.[2] On the day of sentencing, Petitioner was placed in the custody of the United States Marshal for transfer to FCI Seagoville. He arrived at FCI Seagoville in April 2003, and remained there until the BOP returned him to state custody on September 23, 2003. After completion of his state sentence, he was returned to federal custody on May 27, 2004.

## C. Substantive Issues

In December 2005, Petitioner filed the instant action wherein he contends that his federal sentence commenced when it was imposed on January 10, 2003, and that it should run continuously

---

[2] Based on this credit, the state court calculated Petitioner's state sentence as commencing on September 1, 2002. As Respondent points out, this calculated date, in conjunction with a notification from the Kansas Department of Corrections that Petitioner's state sentences fully expired on September 1, 2005, shows that Petitioner was given credit to his state sentences for time served in federal custody after the state sentences were imposed.

2

until discharged.[3] He urges the Court to find that he was within the primary jurisdiction of federal rather than state authorities.

Respondent contends that Petitioner was mistakenly placed in federal custody between March 10 and September 23, 2003, and that Kansas had primary jurisdiction over Petitioner but had merely loaned him to federal authorities temporarily. Because "a condition precedent to legitimately performing the mathematical calculation prescribed by § 3585(a) is that the federal government appropriately exercise primary jurisdiction of the prisoner for purposes of executing the federal terms of imprisonment," (Brief at 7), Respondent claims that Petitioner's sentence did not commence until he completed his state sentence and was relinquished to federal custody on May 27, 2004, under 18 U.S.C. § 3585(a). Respondent further submits that 18 U.S.C. § 3585(b) only provides for credit toward Petitioner's federal sentence from September 18, 2002, through January 16, 2003, because such time was not credited toward his state sentence, and that he has received such credit to his federal sentence. To the extent Petitioner claims to have been wrongfully required to serve his federal sentence in installments, Respondent urges the Court to apply *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003) (per curium) to foreclose the claim.

## II. PRIMARY JURISDICTION

Petitioner argues that he was originally within the primary jurisdiction of the United States as shown by the fact that he was first convicted and sentenced in federal court, but to the extent Kansas had primary jurisdiction over him, it relinquished such jurisdiction when it released him to

---

[3] Petitioner also argues in his reply brief that the Respondent overlooks critical facts that (1) his state crimes were categorized as "presumptive probation" and thus did not carry a penalty of incarceration and (2) had he not requested a concurrent state sentence, he would have received probation on his state offenses and would have already served his federal sentence. However, as shown by attachments to Petitioner's original petition, only one of this two state offenses was designated as presumptive probation, and they both resulted in a term of imprisonment.

3

the United States Marshal in March 2003. Respondent contends that Kansas maintained primary jurisdiction over Petitioner at all relevant times, and relies upon such primary jurisdiction to determine the commencement date of Petitioner's federal sentence. Accordingly, the Court first examines the issue of primary jurisdiction.

"When a person has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns." *Yusufu v. Ashcroft*, 250 F.3d 741, No. 00-10918, 2001 WL 274491, at *1 (5th Cir. Feb. 15, 2001) (per curiam). The first sovereign to take the individual into its control assumes priority of jurisdiction (also referred to as primary jurisdiction) over such individual. *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922); *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). Of course, the sovereign with priority may elect to relinquish its priority to another sovereign. *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980).

Relinquishment of priority generally occurs in one of four ways: (1) release of the person on bail; (2) dismissal of the charges; (3) release of the person on parole; or (4) expiration of the person's sentence. *Cole*, 416 F.3d at 897. Releasing a defendant on a recognizance bond likewise relinquishes primary jurisdiction over the defendant. *Id.* A sovereign may also relinquish primary jurisdiction when it surrenders a prisoner to another sovereign for trial, sentencing, and execution of the sentence, but such relinquishment does not extinguish the surrendering sovereign's right to the prisoner's return to its custody for trial. *DeLong v. United States*, 474 F.2d 719, 720 (5th Cir. 1973) (per curiam). Additionally, a state sovereign may relinquish or waive primary jurisdiction by delivering the prisoner "into federal custody for the purpose of beginning his federal sentence." *See Trowell v.*

4

*Beeler*, 135 Fed. App'x 590, 594 (4th Cir. 2005) (per curiam). Release from actual physical custody is the primary component of every relinquishment of priority of jurisdiction.

When a sovereign releases an individual, even temporarily, a different sovereign may arrest the individual and take priority over him or her. *United States v. Vann*, 207 F. Supp. 108, 111 (D.C.N.Y. 1962). When a subsequent sovereign seizes the body of the person and takes priority, it postpones all claims of the releasing sovereign until the releasing sovereign resumes possession over the body in some way. *Id.* Unless relinquished, "[t]he prior right acquired by first arrest continues unchanged until the arresting government has completed the exercise of its powers, and a waiver extends no further than it is intended to extend." *Zerbst*, 97 F.2d at 254. Consequently, without relinquishing its priority, a sovereign may loan a defendant in its custody to another sovereign for criminal proceedings in the receiving jurisdiction by way of a writ of habeas corpus ad prosequendum. *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980). Such loan results in only a temporary loss of jurisdiction. *Id.*

Here, Petitioner's May 2002 arrest by state authorities originally placed him in the primary jurisdiction of the State of Kansas. However, federal authorities seized the body of Petitioner when he was arrested at the Elk County Jail on September 17, 2002, pursuant to a federally issued arrest warrant. At that point, Kansas effectively surrendered him to such authorities for trial, sentencing, and execution of his federal sentence. *See Richardson v. Outlaw*, No. 1:05-CV-598, 2007 WL 162898, at *3 (E.D. Tex. Jan. 23, 2007) (holding in a case involving an escaped prisoner that "[t]he federal government secured primary jurisdiction over petitioner on April 6, 1976, when he was arrested by federal authorities"). While the Respondent asserts that "petitioner was temporarily turned over to federal authorities", was merely "on loan" to federal authorities, and the State of

5

Kansas retained primary jurisdiction over him, (*see* Brief at 3, 5, 7), the record does not support this assertion. The federal arrest exhibits a specific relinquishment of primary jurisdiction over Petitioner to the federal government, not a temporary loan to a different sovereign.[4] The absence of state credit for time spent in federal custody between his federal arrest on September 18, 2002, and his release back to state custody on January 16, 2003, further suggests that Kansas did not relinquish Petitioner to federal authorities only temporarily. *See Aldridge v. Wendt*, No. 3:03-CV-1052-R, 2004 WL 1217934, at *2 (N.D. Tex. June 3, 2004) (recommendation recognizing generally that "time spent in federal custody pursuant to a writ ad prosequendum is credited toward [the prisoner's] state sentence, not his federal sentence"), *accepted by* 2004 WL 1368275 (N.D. Tex. June 16, 2004) *and aff'd*, 149 Fed. App'x 253 (5th Cir. Aug.26, 2005). The totality of the circumstances in this case indicates that the United States took primary jurisdiction over Petitioner when it arrested him in September 2002.

After Petitioner answered the federal charges and received his federal sentence, he was returned to state custody in January 2003 subject to a federal detainer. By returning Petitioner to state custody for sentencing on his state charges in this manner, it appears that the United States relinquished its priority over him. *See Vann*, 207 F. Supp. at 111 (recognizing that when one sovereign arrests an individual and thus takes primary jurisdiction from another sovereign who had previously arrested the individual, primary jurisdiction returns to the original arresting sovereign when that sovereign resumes possession of the body of the individual in some way). Because Petitioner was not returned to state custody due to a state-issued writ of habeas corpus ad

---

[4] Despite the mention of a writ of habeas corpus ad prosequendum in various responses given to Petitioner as he exhausted his administrative remedies at FCI Seagoville, (*see* Attachment 1 to Pet.), this is not a case where the United States secured temporary jurisdiction over Petitioner via such writ.

prosequendum, primary jurisdiction over him reverted back to Kansas when he was returned to state custody after federal sentencing.

Petitioner argues that Kansas relinquished its primary jurisdiction by releasing him to the custody of United States Marshals after sentencing him on the state charges in March 2003. As conceded by Respondent, Kansas released Petitioner on March 10, 2003, for service of his federal sentence. (*See* Brief at 5.) Such release again relinquished priority over Petitioner to the United States. *See Trowell v. Beeler*, 135 Fed. App'x 590, 594 (4th Cir. 2005) (per curiam) (recognizing that a sovereign may relinquish primary jurisdiction by delivering an individual to federal authorities so that the individual can commence his or her federal sentence). By accepting custody of Petitioner, the United States had priority over him and could insist that he fully serve his federal sentence. The United States maintained primary jurisdiction over Petitioner until it again relinquished priority to Kansas by returning him to state custody in September 2003. Priority returned to the United States once Petitioner completed his state sentence in 2004.

In summary, the sovereign with custody of Petitioner had primary jurisdiction during the period of custody. Because Petitioner was not loaned to any sovereign via a writ of habeas corpus ad prosequendum, primary jurisdiction alternated between the two sovereigns, with each sovereign relinquishing priority to the other when custody over Petitioner passed between them. The Court thus turns to the issue of when Petitioner's federal sentence commenced.

### III. COMMENCEMENT OF FEDERAL SENTENCE

"Title 18 U.S.C. § 3585 determines when a federal sentence of imprisonment commences and whether credit against that sentence must be granted for time spent in 'official detention' before the sentence began." *Reno v. Koray*, 515 U.S. 50, 55 (1995). With respect to commencement of a

federal sentence § 3585(a) provides: "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily at, the official detention facility at which the sentence is to be served."

Here, Petitioner was sentenced to sixty months imprisonment in federal court on January 10, 2003, and was returned to state custody on January 17, 2003, instead of being committed to the custody of the BOP to commence service of his federal sentence. The state court thereafter sentenced him on two state offenses, ordered the state sentences to run concurrently with each other and the previously imposed federal sentence, and returned him to the custody of United States Marshal on March 10, 2003. According to the plain language of § 3585(a), Petitioner's federal sentence commenced on March 10, 2003, when he was delivered to the United States Marshal for delivery to FCI Seagoville to begin serving his federal sentence.

The Respondent argues that because Kansas had primary jurisdiction over Petitioner at all relevant times, and Petitioner was merely on loan to federal authorities prior to the completion of his state sentence and his transfer to federal custody to begin his federal sentence on May 27, 2004, Petitioner's federal sentence commenced on that date.

Notwithstanding the determination that Kansas did not retain primary jurisdiction over Petitioner at all relevant times, this Court recently rejected the argument that a federal sentence could not commence during the time that a prisoner was on loan from the state. *See Daniel v. Berkebile*, No. 3:04-CV-2047-P, 2007 WL 2890373, at *3-4 (N.D. Tex. Sept. 28, 2007) (accepting recommendation of magistrate judge). In that case, the Court noted that the Fifth Circuit expressly stated in *Causey v. Civiletti*, 621 F.2d 691 (5th Cir. 1980), "that a federal sentence could be served during the time that a prisoner was 'on loan' from the state." *Id.* at *4. Although atypical, a federal

sentence may commence even when the prisoner is on loan from state authorities on a writ of habeas corpus ad prosequendum. *See id.* at *3-4. Thus, a prisoner who is on loan from another sovereign and remains in the primary jurisdiction of the loaning sovereign may commence his federal sentence.

As discussed more fully above, the United States had primary jurisdiction over Petitioner at various times, including when he was returned to federal custody in March 2003. Petitioner was not on loan to the federal sovereign through a writ of habeas corpus ad prosequendum. Even assuming for purposes of this motion that he was on loan, however, the applicability of the plain language of § 3585(a) was not defeated even if Kansas did have primary jurisdiction over the prisoner. Petitioner's federal sentence therefore commenced on March 10, 2003, when he was transferred to federal custody for delivery to the facility where he would serve his sentence.

## IV. SENTENCE CALCULATION

Petitioner argues that he should receive credit toward his federal sentence for all time served after it commenced regardless of whether he served such time in state or federal custody.

### A. Credit for Time in Federal Custody

When a federal prisoner is mistakenly placed into federal custody to commence his federal sentence, he is entitled to credit against his federal sentence for time served in federal custody. *See Free v. Miles*, 333 F.3d 550, 552, 555 (5th Cir. 2003); *Daniel v. Berkebile*, No. 3:04-CV-2047-P, 2007 WL 2890373, at *4-6 (N.D. Tex. Sept. 28, 2007) (accepting recommendation of magistrate judge).

In this case, the Court has found that Petitioner was rightfully placed into federal custody after he was sentenced by the state court because Kansas relinquished priority to the United States so that Petitioner could serve his previously imposed federal sentence. Petitioner is therefore

9

entitled to credit against his federal sentence for time he spent in federal custody between March 10, 2003, and September 23, 2003.[5]

**B. Credit for Time in State Custody**

Petitioner also seeks credit to his federal sentence for the time he spent in state custody after his transfer in September 2003, because once his federal sentence commenced, it should have proceeded without interruption. Respondent argues that *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003) precludes such credit.[6]

In *Free*, the Fifth Circuit Court of Appeals recognized a common law rule that once a federal sentence commences, it must run continuously without interruption unless an interruption is caused by some fault of the prisoner. *See* 333 F.3d at 553-54. However, the Fifth Circuit declined to apply such rule in the case of an inmate who was serving consecutive state and federal sentences, was mistakenly placed in federal custody while on loan from state authorities, returned to state custody to serve the remainder of his state sentence, and then returned to federal custody for service of his federal sentence. *See id.* at 554-55. It held that

> [t]he rule against piecemeal incarceration precludes the government from artificially extending the expiration date of a prison sentence; the rule does not, however, justify

---

[5] That Kansas may have credited Petitioner's state sentence with such time does not alter such entitlement. *See Daniel*, 2047-P, 2007 WL 2890373, at *5-6 (specifically rejecting the position that a petitioner may not obtain post-sentence credit to a federal sentence for time actually served in federal custody when the state has credited a state sentence for such time based on policy considerations and the reasoning in *Free, Causey,* and *Boston v. Attorney General*, 210 Fed. App'x 190, 194 (3d Cir. 2006) (per curium)).

[6] Respondent also relies on 18 U.S.C. § 3585(b) for denying Petitioner credit to his federal sentence for time spent in state custody after his transfer in September 2003 because Kansas has already credited Petitioner's state sentence with that time. (Brief at 10-11.) Section 3585(b) provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." The subsection clearly reflects "that credit is awarded only for *pre-sentence* restraints on liberty." *Reno v. Koray*, 515 U.S. 50, 56 (1995). Because the Court has determined that Petitioner's federal sentence commenced in March 2003, § 3585(b) is inapplicable with respect to claimed credit after that date.

10

> or mandate that a prisoner receive a "get out of jail early" card any time that such a minuet occurs, even when the prisoner is not at fault.

*Id.* at 555. The court recognized the clear limited function of such rule: "Its sole purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." *Id.* at 554. When a prisoner serves the correct total time of consecutive state and federal sentences, it does not matter that he may have served his federal sentence in two shifts. *Id.* at 555. Under *Free,* then, federal prisoners are properly denied credit toward their federal sentence for time spent in state custody following the erroneous commencement of their federal sentence.

Although there was no erroneous placement in federal custody and no use of any writ of habeas corpus ad prosequendum in this case, the rationale set forth in *Free* precludes Petitioner's claim for sentence credit for the time he spent in state custody even though the interruption of his federal sentence was due to no fault of his own. *Free*'s rationale for denying credit is not contingent on an initial erroneous placement in federal custody or whether the placed inmate was on loan to federal authorities through a writ of habeas corpus ad prosequendum. *Free* instead focuses on the artificial extension of a sentence.

In this instance, Kansas relinquished its priority to the United States so that Petitioner could serve his federal sentence. The United States later relinquished its priority so that Petitioner could serve his state sentences. By statute, Petitioner's federal sentence under 18 U.S.C. § 924(c) is consecutive to any other sentence. *See* 18 U.S.C. § 924(c)(1)(D)(ii). Consequently, the interruption of Petitioner's federal sentence has not artificially extended his federal sentence. While the relinquishment of priority back to Kansas effectively overrides the state court's order of

concurrent state and federal sentences, Kansas could have given effect to that order by refusing to accept the relinquishment of priority.

Petitioner, furthermore, has no basis to complain about how the two sovereigns agreed to handle his custody. As aptly stated by the Fifth Circuit:

> [T]he federal government and a state are perfectly free to make any agreement between themselves concerning which of their sentences will be served first, as long as the prisoner is not compelled unnecessarily to serve his sentences in a piecemeal fashion. "A person who has violated the criminal statutes of both the Federal and State Governments may not complain of the order in which he is tried or punished for such offenses."

*Causey v. Civiletti*, 621 F.2d 691, 694 (5th Cir. 1980). Although Petitioner has served his federal sentence in two installments, the apparent agreements between Kansas and the United States have not unnecessarily compelled Petitioner to serve his sentences in piecemeal fashion. As recognized in *Free*, the purpose of the rule against piecemeal service of sentence is to prevent governmental abuse to artificially extend the duration of a sentence through releases and re-incarcerations. *See Free*, 333 F.3d at 554. As already discussed, no such abuse occurred in this case. In the absence of such abuse, the Court does not find that Petitioner was unnecessarily compelled to serve his sentences in piecemeal fashion.

Because Petitioner's federal sentence commenced in March 2003 and because his federal sentence has not been extended by its interruption in September 2003, Petitioner is entitled to no credit to his federal sentence for time spent in state custody between September 2003 and May 2004.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT** the instant petition filed pursuant to 28 U.S.C. § 2241 to the extent Petitioner seeks

federal sentence credit for the time he spent in federal custody between March 10 and September 23, 2003. It is further **RECOMMENDED** that the Court otherwise **DENY** the instant petition.

**SIGNED this 30th day of November, 2007.**

                                                                                    _____
                                                                                    IRMA CARRILLO RAMIREZ
                                                                                    UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

                                                                                    _____
                                                                                    IRMA CARRILLO RAMIREZ
                                                                                    UNITED STATES MAGISTRATE JUDGE